**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HARRY J. COLES, *Plaintiff-Appellant*, v. JOSHUA EAGLE, sued in his individual capacity; ELTON ROBERTSON, sued in his individual capacity; MICHAEL HISATAKE; DOE DEFENDANTS, Unknown Emergency Room Personnel at Queen's Medical Center, sued in his/her individual capacity; QUEEN'S MEDICAL CENTER; MATTHEW ING, M.D., *Defendants-Appellees*. | No. 11-16471 D.C. No. 1:09-cv-0167-LEK-BMK OPINION |

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra and Leslie E. Kobayashi, District Judges,
Presiding

Argued and Submitted
October 11, 2012—Seattle, Washington

Filed December 5, 2012

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's jury verdict and the district court's partial grant of summary judgment in a 42 U.S.C. § 1983 action in which plaintiff alleged excessive force during an arrest.

The panel held that the evidence gave rise to genuine issues of fact that were material to determining whether defendants used excessive force in breaking a car window and pulling plaintiff through it. The district court therefore erred in granting summary judgment to defendants. The panel further held that the district court's jury instruction, which instructed that defendants did not, as a matter of law, use excessive force when they broke the window and dragged plaintiff through it, enforced an erroneous partial grant of summary judgment in favor of defendants and, as such, constituted reversible error.

### COUNSEL

David A. Perez, Perkins Coie LLP, Seattle, Washington, for Plaintiff-Appellant.

Curtis E. Sherwood, D. Scott Dodd, Deputies Corporation Counsel, Honolulu, Hawaii, for Defendants-Appellees Joshua Eagle and Elton Robertson.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

D. Scott Dodd, Deputy Corporation Counsel, Honolulu, Hawaii, for Defendant-Appellee Michael Hisatake.

Kunio Kawabe, Hisaka, Yoshida & Cosgrove, Honolulu, Hawaii, for Defendants-Appellees Unknown Emergency Room Personnel at the Queen's Medical Center and Queen's Medical Center.

Patricia T. Fujii, Ayabe, Chong, Nishimoto, Sia & Nakamura, Honolulu, Hawaii, for Defendant-Appellee Matthew Ing, M.D.

## OPINION

TASHIMA, Circuit Judge:

Plaintiff Harry J. Coles claims that defendants Joshua Eagle and Elton Robertson, officers of the Honolulu Police Department, used excessive force in arresting him. The officers moved for summary judgment, arguing that their conduct was reasonable and, in any event, that they were entitled to qualified immunity. Although Coles brought a single claim of excessive force under 42 U.S.C. § 1983, the district court held on summary judgment that some of the officers' actions were reasonable as a matter of law, but other parts of the encounter raised genuine issues of material fact. *See Coles v. Eagle*, 753 F. Supp. 2d 1092 (D. Hawaii 2010). A jury was then asked to assess the reasonableness of only some aspects of the officers' conduct; it found in their favor. Coles argues that the district court improperly resolved factual disputes and made inferences in favor of the officers, and that the subsequent jury verdict must be vacated because

the jury was erroneously instructed that some of the officers'
force was reasonable as a matter of law. We agree.

## I.

### A. The Arrest

The following events happened over the course of
approximately four minutes, in the middle of the night. Coles
was driving a Nissan sports car along Kapiolani Boulevard in
Honolulu. According to Officer Eagle, Coles was weaving
between lanes and then slowed to a speed of around two
miles per hour. Coles disputes that he was weaving and says
that he moved to the right lane when he saw Eagle's patrol
car approaching from the rear. Eagle ran the Nissan's license
plate and learned that it was reported stolen. He then signaled
for Coles to pull over.

Coles did not pull over immediately; instead, he made the
first available right turn into a parking lot. Defendants assert
that he made a "quick" turn into the lot and then "accelerated
rapidly" to the far end where he stopped abruptly at an exit
that was blocked by three-foot-high concrete barriers. Coles
disputes this account and says he pulled into the lot so that the
traffic stop could take place "out of harm[']s way." Eagle
claims that the exit appeared to be unobstructed when viewed
from the lot entrance. Coles disagrees and states that the
barriers, which were bright yellow, were visible even from a
distance.

Eagle positioned his vehicle directly behind the Nissan,
sandwiching it between the concrete barriers and his patrol
car. He then approached the Nissan and ordered Coles to
exit. Coles maintains that he tried to open the door but that

it was locked and, being unfamiliar with that particular car, did not know how to unlock the door.

Officer Robertson then arrived on the scene. He saw that Eagle was ordering Coles to exit the vehicle, and claims the Nissan's engine was still running. Coles maintains that he turned the engine off at some point during the encounter. Coles told the officers that he was unable to open the locked door. Robertson drew his weapon and positioned himself near the Nissan, with a clear view of Coles. The officers then ordered Coles to do the impossible: they simultaneously instructed him to exit the vehicle and keep his hands on the wheel. Defendants claim that Coles was making "furtive" hand movements, gesturing downward and removing his hands from their view. Coles disagrees and maintains that he was simply trying to unlock the door, in attempted compliance with defendants' contradictory orders. Coles concedes, however, that he moved his hands in an effort to open the door.

What happened next is the most critical of many disputed facts: Coles says he put both hands on the wheel and looked straight ahead, frozen with fear. The officers deny that Coles placed his hands on the wheel and maintain that he continued to make furtive gestures. Then, without warning, Eagle smashed the driver's side window with his baton, and the officers began pulling the 5'9", 200-pound Coles through the window.

The officers claim that Coles resisted the extraction by locking his legs around the steering column. Coles disputes that he resisted and explains that his body size simply made the task difficult. Eagle concedes that he kicked Coles twice

in the upper torso during the extraction and explains that it was a "diversionary tactic" to induce Coles's compliance.

Coles claims that after the officers removed him from the car, they threw him on the ground and kicked him repeatedly. He says that Eagle beat him with a baton while Robertson "fell on [him] with his knee, in the middle of his back, and remained there while [Eagle] struck [him] in the head with his baton and then handcuffed him." Finally, he claims that "[p]rior to being handcuffed, the officers tore off his blood spattered shirt and pants and left him in his underw[ear]." The officers deny that they beat Coles after removing him from the vehicle.

## B. Summary Judgment

The officers moved for summary judgment on qualified immunity grounds. As to the question of whether defendants violated Coles's Fourth Amendment right to freedom from unreasonable seizure, the district court held that the force used to break the car window and pull Coles from the car was reasonable but that genuine issues of material fact existed concerning the officers' use of force "once Coles was removed from the car." *Coles*, 753 F. Supp. 2d at 1101 (emphasis omitted). The district court granted partial

summary judgment in favor of the officers,[1] after which the case was reassigned to a new judge for trial.

## C. Jury Trial

A jury considered the narrow question of whether defendants used unreasonable force *after* removing Coles from the car. The jury was instructed:

> This Court has already found as a matter of law, that the arrest was lawful, and that defendants' acts of breaking the vehicle window and pulling plaintiff from the vehicle was reasonable under the circumstances. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officers used excessive force when they used physical force to arrest plaintiff *after he was removed from the vehicle*.

---

[1] Although the district court's order is formally titled: "Order Denying Defendants' Motion for Summary Judgment," *Coles*, 753 F. Supp. 2d at 1093 (emphasis omitted), it was in substance a partial grant of defendants' motion. *See also id.* at 1101 ("Defendants are not entitled to qualified immunity on Coles' claim that they used excessive force against him *once he was out of the car* and summary judgment is DENIED." (emphasis added)).

The district court did not reach the question of whether defendants' actions violated clearly established law of which a reasonable officer would have been aware – the second prong of *Saucier v. Katz*, 533 U.S. 194 (2001). Although defendants argued this point in their motion for summary judgment, they failed to do so on appeal, and we denied their post-argument motion for supplemental briefing on this issue. The issue remains open for consideration on remand.

(Emphasis added.)  Under this instruction, the jury found in favor of defendants.  Coles appealed both from the jury's verdict and the district court's grant of partial summary judgment.

## II.

We review de novo the district court's underlying order granting in part and denying in part defendants' motion for summary judgment on qualified immunity grounds.  *See Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1114 (9th Cir. 2005).  Where disputed issues of material fact exist, we assume the version asserted by Coles, the non-movant.  *See KRL v. Estate of Moore*, 512 F.3d 1184, 1188–89 (9th Cir. 2008).  All reasonable inferences must be drawn in favor of the non-movant.  *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008).  We have jurisdiction to review the decisions below pursuant to 28 U.S.C. § 1291.

Whether the jury instructions correctly stated the law is also subject to de novo review.  *See Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011).

## III.

We analyze all claims of excessive force that arise during or before arrest under the Fourth Amendment's reasonableness standard, as guided by the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determining whether defendants' use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted).  We have often

observed that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

Here, the evidence gives rise to genuine issues of fact that are material to determining whether defendants used excessive force in breaking the car window and pulling Coles through it. The district court therefore erred in granting partial summary judgment to defendants. *See* Fed. R. Civ. P. 56(c). Because "the materiality determination rests on the substantive law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), we turn our attention to the reasonableness of defendants' conduct under the substantive law of *Graham*:

> We apply *Graham* by first considering the nature and quality of the alleged intrusion; we then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001). As we have previously explained, [t]hese factors, however, are not exclusive. Rather, we examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (alteration in original) (internal quotation marks omitted). Although it is well-settled that "officers need not employ the least intrusive degree of force possible . . . officers must consider less intrusive methods of effecting the arrest. . . ." *Bryan*, 630 F.3d at 831 n.15 (internal quotation marks, citation and emphasis omitted).

## A. *Nature and Quality of the Intrusion*

We first consider "the nature and quality of the alleged intrusion" on Coles's rights. *Mattos*, 661 F.3d at 441. It is undisputed that defendants shattered the driver's side window, pulled Coles through that window, and kicked him in the upper torso during the extraction. We must resolve in Coles's favor the disputed allegation that defendants continued to beat him until they handcuffed him.

Both the force used to extract Coles through the broken glass window and the baton blows were "capable of inflicting significant pain and causing serious injury," and as such "are regarded as 'intermediate force' that, while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1161–62 (9th Cir. 2011). We therefore agree with the district court that Coles has established *prima facie* a significant Fourth Amendment intrusion. *See Coles*, 753 F. Supp. 2d at 1097–98.

*B.  Governmental Interests*

*1.  Severity of the Crime*

The facts relevant to the "severity of the crime" prong are not genuinely at issue.  The officers had reason to believe that Coles had stolen a car,[2] a felony-grade offense.  We agree with the district court that this factor weighs in favor of defendants.  *See Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

*2.  Immediacy of the Threat*

The "most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others." *Mattos*, 661 F.3d at 441 (internal quotation marks omitted).  There is a material factual dispute as to whether Coles's hands were on the steering wheel when defendants shattered the car window:  Coles says yes; the officers say no.  The dispute is material because it goes to the heart of the threat that defendants faced at the moment they broke the window, and its resolution rests entirely on whose version of the story a fact-finder deems more credible.

We must, in the context of summary judgment, resolve this disputed factual issue in favor of Coles, draw all reasonable inferences in his favor, and view "from the perspective of a reasonable officer on the scene" the circumstances that existed immediately before the officers broke the window.  *Graham*, 490 U.S. at 396.  Those

---

[2] Coles had in fact stolen the Nissan he was driving that night.  *See State v. Coles*, 209 P.3d 194 (unpublished table decision), 2009 WL 1280604 (Haw. App. May 11, 2009) (affirming Coles' conviction).

circumstances were as follows:  a suspected car thief, whose car was boxed in between a concrete barrier and a patrol car, claimed he was unable to unlock his car door; the officers repeatedly gave the suspect conflicting orders to exit the vehicle and to keep his hands visible; the suspect made hand movements in attempted compliance with the order to exit, but eventually, according to him, placed both hands on the wheel and looked straight ahead; and one officer had a gun trained on the suspect.  On these facts, a reasonable jury could conclude that the officers did not face such an immediate threat to their safety as to justify the extreme measure of smashing a car window and dragging Coles through it.

### 3.  Resisting or Evading Arrest

The third *Graham* factor asks whether Coles was "actively resisting arrest or attempting to evade arrest by flight" and whether "any other exigent circumstances . . . existed at the time of the arrest."  *Deorle*, 272 F.3d at 1280 (internal quotation marks omitted).  Once again, material issues of fact reserve these questions for the jury.

Although it is undisputed that Coles did not pull over immediately in response to Eagle's signal, two facts material to the question of evasion are at issue:  (1) whether Coles turned "quickly" into the parking lot and then sped up, stopping abruptly at the far end of the parking lot where an exit was blocked by concrete barriers; and (2) whether that exit appeared to be unobstructed when viewed from the street. Resolving these disputes in favor of Coles, as we must, we cannot say that making the first available right turn and pulling slowly into a parking lot, the exit of which was clearly blocked, is a factual circumstance suggesting evasion.  *See*

*Liberal v. Estrada*, 632 F.3d 1064, 1079 (9th Cir. 2011). Moreover, the fact that Coles was seated in a car that was wedged between a concrete barrier and a patrol car meant that, at the time defendants decided to shatter the window, the risk of evasion or escape was minimal.

As to the question of whether Coles actively resisted arrest by failing to comply with a lawful order to exit the vehicle, the answer is no. "[W]e have drawn a distinction between passive and active resistance," and failing to exit a vehicle is not "active resistance" and does not justify the officers' actions. *Bryan*, 630 F.3d at 829–30 ("Even if Bryan failed to comply with the command to remain in his vehicle, such noncompliance does not constitute 'active resistance' supporting a substantial use of force."); *cf. Mattos*, 661 F.3d at 445 (suspect who "refused to get out of her car when requested to do so and later stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from the car" had "engaged in some resistance to arrest"). Moreover, given that the officers had ordered Coles to place his hands on the wheel, a jury could find that Coles was complying with the officers' order by staying in the car.

Finally, it is undisputed that Coles moved his hands off of the steering wheel at various points during the encounter; the officers characterize these as "furtive" movements that justified their actions. But to the extent that Coles's hand movements constituted an exigency, it was one of the officers' own making: they ordered Coles simultaneously to keep his hands visible and exit a locked vehicle, even though compliance with the latter order necessarily required violating the former. A jury could reasonably find that Coles's hand movements were attempts to comply with the officers' order to exit the vehicle. Rather than precipitating an exigency, the

officers could simply have given Coles specific, non-contradictory instructions.[3]  Although not dispositive, the presence of this reasonable, less-intrusive alternative course of action figures into our *Graham* analysis.  *See Bryan*, 630 F.3d at 831 & n.15.  Considering the totality of the circumstances, this factor weighs against the officers.

## C.  Balancing the Interests

We "balance the gravity of the intrusion on [Coles] against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Miller*, 340 F.3d at 964.  Here, the scale tips in favor of Coles.  A reasonable jury could conclude that the officers' force was not justified against an individual:  (1) who was suspected of a nonviolent felony and did not appear armed; (2) who did not actively resist or evade arrest and, in any event, had no real chance of escape; (3) who was given conflicting orders by two officers, one of whom had a gun trained on him; and (4) whose hands were on the steering wheel just before officers shattered the driver's side window and proceeded to drag him through it.  Thus, the district court erred in concluding on summary judgment that defendants did not employ excessive force as a matter of law when they broke the car window and dragged Coles through it.

---

[3] We can hypothesize any number of orders that could have defused the situation and avoided a forcible window extraction.  For example: "Put your right hand on top of the steering wheel and use your left hand to find the door lock."

**IV.**

The trial court's jury instruction enforced an erroneous partial grant of summary judgment in favor of defendants and, as such, constitutes reversible error.[4] Jury instructions must correctly state the law and failure to do so warrants reversal, unless the error is harmless. *See Hunter*, 652 F.3d at 1232. Here, the jury was instructed that defendants did not, as a matter of law, use excessive force when they broke the window and dragged Coles through it. This instruction was prejudicial error because, "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted). The substance of the applicable law under *Graham* is whether the officers' force was reasonable under the totality of the circumstances, and the court's instruction plainly prevented the jury from applying *Graham* to all of the relevant facts.

**V.**

The judgment on the jury verdict and the district court's earlier partial grant of summary judgment in favor of defendants are reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[4] We recognize that, given the court's earlier partial grant of summary judgment, the trial judge was required to give such an instruction.