**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3605
_____

DON R. ICKES,
                              Appellant

v.

CRAIG GRASSMYER; BARRY AUGNST; THOMAS LASKEY; STATE OF
PENNSYLVANIA; RONALD GIVLER; TOWNSHIP OF GREENFIELD
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-13-cv-00208)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 27, 2017
Before:  SHWARTZ, COWEN and FUENTES, Circuit Judges

(Opinion filed: July 28, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Don Ickes appeals the District Court's order granting summary judgment to the defendants. For the reasons discussed below, we will affirm the District Court's judgment.

On July 18, 2011, Trooper Laskey determined that a man later identified as Ickes was driving 70 miles per hour in a construction zone where the speed limit was 50 miles per hour. Trooper Laskey activated his siren to pull over Ickes. Instead of stopping immediately, however, Ickes continued to drive for nearly another minute, ultimately pulling into a secluded driveway.[1] Trooper Laskey continually asked for Ickes's license and registration, and while Ickes apparently pressed his documents against the inside of his window, he refused Trooper Laskey's direction to hand the papers to him.

Trooper Laskey then called for backup. He also determined that Ickes's license plate was fraudulent; it was issued by an organization called the "Embassy of Heaven" rather than any state. The officers later learned that the vehicle's registration was also issued by the Embassy of Heaven. Eventually, four more police officers arrived on the scene. One officer, Trooper Grassmyer, recognized Ickes and said the officers should immediately remove him from the car. Grassmyer stated in his declaration that he was familiar with Ickes as a member of the sovereign-citizen movement, that Ickes had previously had many run-ins with police officers, that there were standing orders to send two cars to any calls to Ickes's home, and that the driveway in which Ickes had stopped his car belonged to another member of the sovereign-citizen movement who had

_____

[1] This and much of what follows is depicted in a police dash-cam video.

2

previously confronted a police officer with a gun. Trooper Grassmyer then asked Ickes several times to open the door, and told him that if he did not, it would get opened.

Ickes still refused to open the door. At this point, Laskey shattered the front-passenger-side window, unlocked the door, and pulled Ickes out. Ickes claims that he was pulled through broken glass and then tackled onto the concrete driveway. He was handcuffed and placed in a police vehicle. During the drive to the police station, Ickes complained of chest pains, and Trooper Laskey took him to a hospital. At the hospital, Ickes told the doctor that his chest pains had started earlier that day, before his police encounter. The doctor recommended that Ickes stay in the hospital overnight, but Ickes declined to do so. The medical records report that Ickes had some abrasions on his right forearm but no other injuries. Ickes has presented photographs of the shirt he said he was wearing on the night of the incident, which has blood stains on the back.

Ickes was eventually charged with, and convicted of, resisting arrest, harassment (arising out of his efforts to file a criminal complaint against Trooper Laskey), and several summary offenses concerning his speeding, his use of a fraudulent license plate and registration, and his failure to yield to Officer Laskey's vehicle and provide him with documents upon request. See D.C. dkt. #7-2.

Ickes then filed this action, naming as defendants Trooper Laskey, Trooper Grassmyer, Trooper Augnst (who was also present), Ronald Givler (the chief of the Greenfield Township Police Department), and Greenfield Township. He presented several state-law claims and claims under 42 U.S.C. § 1983, including, among other

3

things, excessive force. The parties filed motions to dismiss. The District Court granted the motions in part and denied them in part, permitting only Ickes's excessive-force claims against all defendants and a few state-law claims against Givler to go forward. After discovery, the Court then granted summary judgment to the defendants on the remaining claims. Ickes filed a timely notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291. We exercise a plenary standard of review and apply the same standard as the District Court to determine whether summary judgment was appropriate. State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009).

Ickes devotes the majority of his opening brief to challenging the validity of his state convictions. However, he cannot raise those claims here — both because he did not present them in the District Court, see, e.g., Eid v. Thompson, 740 F.3d 118, 125 (3d Cir. 2014), and because a civil-rights action is not an appropriate vehicle to challenge his conviction and sentence, see Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Further, because Ickes does not challenge either the District Court's partial grant of the defendants' motions to dismiss or the Court's grant of summary judgment to Ronald Givler, he has waived any such challenges. See United States v. Jackson, 849 F.3d 540, 555 n.13 (3d Cir. 2017).

Thus, the only issue properly preserved for our review is the District Court's grant of summary judgment to the defendants on Ickes's claim that they used excessive force in

the course of arresting him.[2]  In analyzing an excessive-force claim, courts examine

whether the force used was objectively reasonable, see Graham v. Connor, 490 U.S. 386,

397 (1989), considering (1) "the severity of the crime at issue," (2) "whether the suspect

poses an immediate threat to the safety of the officers or others," (3) "whether he is

actively resisting arrest or attempting to evade arrest by flight," id. at 396, (4) "the

possibility that the persons subject to the police action are themselves violent or

dangerous," (5) "the duration of the action," (6) "whether the action takes place in the

context of effecting an arrest," (7) "the possibility that the suspect may be armed," and

(8) "the number of persons with whom the police officers must contend at one time,"

Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  "[T]he right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical

coercion or threat thereof to effect it."  Graham, 490 U.S. at 396.  The defendants are

---

[2] The defendants argue at some length that this claim is barred by the applicable statute of limitations.  As they acknowledge, however, the only time that they mentioned this statute-of-limitations defense was in their answer to the complaint; they did not raise it in support of their motion to dismiss, their motion for summary judgment, or at any other time.  While we may affirm a district court's decision on grounds other than those relied upon by that court, this principle applies only when "the issue which forms the basis of our decision was before the lower court."  Holk v. Snapple Beverage Corp., 575 F.3d 329, 336 (3d Cir. 2009) (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 904 n.1 (3d Cir. 1997)).  Because the defendants' only assertion of this defense was a cursory statement in their answer, we conclude that this defense was not "before the lower court" for these purposes.  See Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1160-61 (3d Cir. 1989); see also Brown v. Crowley, 312 F.3d 782, 787-88 (6th Cir. 2002); Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir. 1995).

5

entitled to summary judgment if their use of force was objectively reasonable as a matter of law.  See Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).

We agree with the District Court's thorough analysis of the relevant factors.  The undisputed evidence reveals that Trooper Laskey made a legitimate traffic stop.  See United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).  He was entitled to ask for Ickes's license and registration and to order him to exit his vehicle.  See New York v. Class, 475 U.S. 106, 115 (1986); 75 Pa. Cons. Stat. § 1311(b).  Ickes acted suspiciously in passing up numerous safe places to pull over his car in favor of a secluded private driveway.  See Dunn v. Matatall, 549 F.3d 348, 354 (6th Cir. 2008).  The officers were entitled to rely on Trooper Grassmyer's statement that Ickes had clashed with police in the past.  See Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005).  Moreover, while the officers did not see a weapon in plain sight, they could not rule out the possibility that there was a weapon concealed in his car — or even that he could attempt to use his car as a weapon.  See Brothers v. Zoss, 837 F.3d 513, 519 (5th Cir. 2016).  A reasonable officer might also think that Ickes's fraudulent license plate and refusal to comply with any requests suggested that he might be inclined to escalate his resistance.  See Davis v. Clifford, 825 F.3d 1131, 1136 (10th Cir. 2016).  And, critically, the defendants here did limit their use of force.  Their force was directly related to their effort to effectuate the arrest,[3] and the doctor who examined Ickes just after the incident

_____

[3] Some factors unquestionably counsel against any serious use of force: Ickes was originally stopped for relatively minor traffic violations, see Deville v. Marcantel, 567

reported that Ickes had no acute injuries, only "some abrasions to his right forearm."

D.C. dkt. #47-4 at 20.

In these circumstances, we agree with the District Court that, even construing the facts in Ickes's favor, the officers' use of force was objectively reasonable under the relevant factors as a matter of law.[4]  See Kopec, 361 F.3d at 777; Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015).

Accordingly, we will affirm the District Court's judgment.

---

F.3d 156, 167 (5th Cir. 2009) (per curiam), his resistance to the officers was passive, see Coles v. Eagle, 704 F.3d 624, 629-30 (9th Cir. 2012), he was 76 years old at the time of the incident, and, in the video, does not appear to present any physical threat to the officers.  However, as noted above, the officers did limit the amount of force they used.

[4] In addition to Ickes's claim that the defendants used excessive force in breaking his window, pulling him out of the car, and handcuffing him, he alleges that the defendants used excessive force by applying the handcuffs too tightly, buckling his seatbelt too tightly, and pushing him back in the seat of the police vehicle when he was leaning forward.  Having reviewed the evidence in light of the relevant factors, we agree with the District Court that these applications of minimal force were objectively reasonable as a matter of law.  See Gilles v. Davis, 427 F.3d 197, 208 (3d Cir. 2005); see generally Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (quotation marks omitted)).  Accordingly, we will likewise affirm the District Court's judgment as to these claims.