**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-60540
Summary Calendar
_____


PAMELA KEITH,

Plaintiff-Appellee,

VERSUS

MAURY L. SCHUH,
In His Individual Capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(1:96-CV-39-D-D)
_____
August 17, 1998


Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Maury Schuh appeals the partial denial of summary judgment on Pamela Keith's First Amendment retaliation claim brought under 42 U.S.C. § 1983. Concluding that Schuh had probable cause to arrest Keith and that, once under arrest, Keith was properly placed in a detention cell, we reverse and render summary judgment in favor of Schuh.

_____

        * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

A young-sounding woman claiming to be Gladys Welch called in a prescription refill to a pharmacy. Knowing Welch to be an older woman, the pharmacist was suspicious and began making phone calls. There is a factual dispute as to whether Welch told the pharmacist that she had asked her daughter and son-in-law to pick up the prescription for her. It is undisputed, however, that the doctor's office that had written the prescription informed the pharmacist that there had been other problems with the prescription and that he should consider the prescription canceled and should refuse to fill it for anyone. It is also undisputed that the pharmacist then called the police, telling them that both Welch and the prescribing doctor had disclaimed any authority for anyone to pick up the prescription.

Roy Moreno, Keith's husband, eventually arrived to pick up the drugs, and Lee County Deputy Sheriff Maury Schuh confronted him. After a conversation with Moreno, Schuh escorted him to Moreno's car, where Keith and a small child were waiting. Schuh asked them to follow him back to the sheriff's department, and they did so.

Schuh placed Moreno and Keith in separate rooms and questioned them. According to Keith, Schuh questioned her for about five to seven minutes. At one point, according to Keith, a heated exchange took place:

> I said, look, let me tell you something, I would not risk going to jail over 12 half of a milligram nerve pills when I've got 90 that's a lot stronger than the ones she's got. He said, oh, you do? He said, well, I'll tell you what I'll do, I'll call the Welfare on you right now and have your kid took away from you.

* * *

I said, you pick up that mother fucking phone and you call 'em. And I jumped out of that chair and I said, you don't threaten me to call no Welfare on me because I ain't done a damn thing. I said, I had permission to pick that medicine up and if you don't believe me, that's tough. He said, you're going in the cell. I said, put me in there. Because I didn't care. I ain't scared of none of 'em down there.

* * *

And he's lucky I didn't knock him through that wall, because I didn't care if I sat in that jail for a little while. . . . I mean, that's how mad he made me when he threatened me with that Welfare.

After this alleged exchange, Schuh had another officer place Keith in a detention cell, where she remained, by her estimation, about ten or fifteen minutes, during which time she sat on a cot and smoked cigarettes. After spending less than an hour at the Sheriff's Department, Keith and Moreno were released.

A few weeks later, Schuh swore out a warrant for Keith's arrest, charging her with felony conspiracy to obtain a controlled substance and with uttering a forgery. These charges were later dismissed.

II.

Keith alleged that she had been arrested and prosecuted without probable cause, in violation of the Fourth Amendment, and that her brief incarceration had been in retaliation for her exercise of protected speech, in violation of the First Amendment. Schuh moved for summary judgment on the basis of qualified immunity. The district court granted summary judgment on the

3

Fourth Amendment claims, which action Keith does not appeal, but denied it on the First Amendment claim.

## III.

Where summary judgment is denied in a civil rights action on the basis of an officer's immunity from suit, the collateral order doctrine permits an interlocutory appeal. *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995). Our review of such appeals is limited by the extent to which the district court's action was based on issues of law, rather than of disputed fact. *See Johnson v. Jones*, 515 U.S. 304, 313-18 (1995).

The existence of some disputed issues of material fact does not necessarily preclude our review, however. Rather, we may decide, as a matter of law, whether those historical facts deemed adequately supported by the record meet the applicable standard of qualified immunity. *See Behrens v. Pelletier*, 516 U.S. 299 (1996); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). Where a district court has not identified what facts it deems adequately supported, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the moving party, likely assumed." *Behrens*, 516 U.S. at 313 (quoting *Johnson*, 515 U.S. at 319).

Here, there is no doubt that many of the facts relating to the availability of qualified immunity are in dispute. This alone,

4

however, cannot enable Keith to survive summary judgment, for the *Behrens* Court held that the denial of qualified immunity is not immune from interlocutory appeal simply because it "rested on the ground that material issues of fact remain." 516 U. S. at 312 (internal punctuation omitted). For an appeal to be foreclosed, the facts in dispute must be necessary to§§"not truly 'separable'" from§§the availability of qualified immunity. *Id*.

We may take the undisputed facts and assume the resolution of disputed facts in Keith's favor, and apply the resulting factual scenario to the correct legal standard. *See id.; Baker v. Putnal*, 75 F.3d 190, 197 (5th cir. 1996); *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996); *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996). If we find, on the basis of these facts, that Schuh is entitled to qualified immunity, any resolution of the disputed facts becomes immaterial. Having jurisdiction over the appeal, then, we review the partial denial of summary judgment *de novo*. *See Coleman*, 953 F.3d at 533.

## IV.

Qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a defense not only to liability but also from suit altogether. *Mitchell v. Forsyth*, 472 U.S. 511, 526

5

(1985).

To determine whether qualified immunity is available to a law enforcement officer, a court must inquire into the "objective legal reasonableness" of his actions. *Behrens*, 516 U.S. at 306. We must determine whether the plaintiff has alleged a violation of a constitutional right clearly established at the time of the unfortunate event, *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994), for if no right was violated, the lawsuit must end. If a constitutional right has been violated, we must assess the objective reasonableness of the officer's actions. *Id*.

Qualified immunity protects government officials "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)), and thus it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If reasonable officers could differ on the lawfulness of a defendant's actions, he is entitled to immunity from suit. *Pfannstiel*, 918 F.2d at 1183; *see also Malley*, 475 U.S. at 341.

V.

Schuh contends that Keith's "I ain't done a damn thing" diatribe was not speech protected by the First Amendment. We need not reach this issue, for Schuh's treatment of Keith was entirely within the scope of his authority, and Keith has presented no

6

evidence that Schuh retaliated in any way.

No one disputes that Schuh's placement of Keith in a detention cell would have been entirely appropriate, but for the alleged retaliatory motive. Schuh detained Keith without a warrant, to be sure, but this brief detention was supported by probable cause, namely her participation in an apparent scheme to obtain controlled substances.[*]

Keith rests her entire case on the theory, apparently derived from *Mt. Healthy Board of Educ. v. Doyle*, 429 U.S. 274 (1977), that Schuh's alleged retaliatory animus renders his otherwise proper act unconstitutional. Again, we may avoid addressing the merits of this theory, for even under Keith's proposed inquiry into Schuh's subjective intent, Keith has presented no competent summary judgement evidence as to Schuh's alleged retaliatory animus.

Keith bears the burden of setting forth specific facts showing that there is a genuine issue for trial. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). She has failed to do so. Aside from her bald and conclusional allegations of retaliations, there is no indication in the summary judgement record that Schuh intended to retaliate. On the contrary, the only evidence we have of Schuh's subjective intent is his deposition testimony that he placed Keith in a detention cell because he believed she might pose a security threat

---

[*] *Cf., e.g., City of Riverside v. McLaughlin*, 500 U.S. 44, 52-57 (1991) (warrantless detention for 48 hours); *Brinegar v. United States*, 338 U.S. 160, 175-78 (1949) (probable cause determination); *Ornelas v. United States*, 516 U.S. 690, 695-97 (1996).

if left unsecured and unsupervised. Keith has given us no reason to doubt that testimony, so there is no disputed issue of material fact.

Therefore, we must conclude that§§at the very least§§reasonable officers could disagree as to the reasonableness of Schuh's actions in confining Keith to the detention cell. Because Schuh's allegedly violative acts were objectively reasonable, he is shielded from personal liability for those acts under the doctrine of qualified immunity. *See Pfannstiel*, 918 F.2d at 1183.

The partial denial of summary judgment is REVERSED, and judgment is RENDERED for Schuh.