# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2015

Lyle W. Cayce
Clerk

No. 15-20182
Summary Calendar

DONATHON L. STEPHENSON; C. RENEE STEPHENSON,

Plaintiffs - Appellants

v.

CHIEF CHARLES MCCLELLAND; C.M. DUNCAN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2243

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiffs Donathon L. Stephenson[1] ("Mr. Stephenson") and C. Renee

Stephenson ("Mrs. Stephenson") appeal the dismissal of their claims under 42

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Defendants contend that this court lacks jurisdiction to consider issues on appeal related only to Mr. Stephenson's claims because he did not sign the pro se notice of appeal that was filed and signed by Mrs. Stephenson (although he was named in the notice), nor did he file his own pro se notice of appeal. Defendants are correct that notices of appeal are subject to Federal Rule of Civil Procedure 11(a)'s signature requirement. However, the Supreme Court has held that the signature requirement on a pro se notice of appeal is not jurisdictional and may be cured by providing a signed notice of appeal once the omission is called to the party's attention. *See Becker v. Montgomery*, 532 U.S. 757, 764–66 (2001); *Wash v. Johnson*, 343 F.3d 685, 688 (5th Cir. 2003). Because we conclude that Mr. Stephenson's claims are without merit, and because the signature requirement of Rule 11 is non-

No. 15-20182

U.S.C. § 1983 and Texas law against defendants Chief Charles McClelland in his official capacity and Officers C.M. Duncan and Brian T. McCray in their individual and official capacities (collectively, "Defendants").  We AFFIRM.

## I. Background

On June 15, 2010, Houston police officer C.M. Duncan responded to an anonymous tip in a 911 call reporting the presence of a man brandishing a gun on a residential street in southwest Houston.  Officer Duncan drove to the neighborhood where the caller reported seeing the individual.  From a distance, Officer Duncan spotted an individual who appeared to match the caller's description, although he was too far away to determine whether the individual had a gun.  The individual was standing in front of a residence near a car parked in a driveway.  Officer Duncan pulled over to investigate further and activated the lights of his patrol car.  As he exited his patrol car, he verbally commanded the individual to stop and show his hands.  Officer Duncan observed that the individual did not immediately respond and instead began moving away from the car towards the front of the house.  The individual was saying something that Officer Duncan could not understand.  Officer Duncan testified that, based on the 911 call reporting that the individual had a gun and the fact that the individual did not comply with Officer Duncan's verbal commands, he was concerned for his safety.  He began to draw his weapon as he exited his patrol car.

The suspect was later identified as Karlton Stephenson, a 16-year-old resident of the address where this incident occurred.  Karlton testified that he had gone outside to his mother's car to retrieve her taser from the car before taking his dog for a walk.  Karlton stated that he heard Officer Duncan order

---

jurisdictional, we decline to require Mr. Stephenson to cure his notice of appeal only to dismiss his claims on the merits.

him to stop and not run, but that he continued walking to the house, saying, "Can I get my mom?"

As Officer Duncan approached Karlton, he was surprised by a large dog, which was later identified as the 50-pound, three-year-old boxer belonging to the Stephensons. Officer Duncan testified that the dog bared its teeth and jumped on him. Karlton claimed, however, that the dog did not jump and was "smiling." It is undisputed, however, that the dog was in the front yard without a leash and appeared suddenly as Officer Duncan reached Karlton. Officer Duncan fired one shot at the dog, testifying that he did so because he feared for his safety. Officer Duncan then proceeded to detain and search Karlton. The dog died later that day.

Having heard the gunshot, Mrs. Stephenson, Karlton's mother, came out of the front door of the residence. Officer Duncan told Mrs. Stephenson that he was responding to a 911 call and ordered her to keep her distance while he completed his investigation. Mrs. Stephenson acknowledged during her deposition testimony that she refused to comply, followed Officer Duncan as he walked Karlton to his police vehicle, and that she repeatedly questioned Officer Duncan about his actions. She testified that while Officer Duncan searched Karlton at the police car, she stood near Karlton, despite Officer Duncan's requests that she remain clear of his investigation.

Other neighbors began to emerge from the surrounding houses and family members began to arrive. Seeing a crowd develop, Officer Duncan called for backup, and other officers, including Officer Duncan's supervisor, Sergeant McCray, arrived at the scene to assist with crowd control. Sergeant McCray also ordered Mrs. Stephenson to stay clear of the scene to allow the officers to complete their investigation. Officer Duncan eventually asked

another officer to place Mrs. Stephenson in the back of his patrol vehicle. Mrs. Stephenson was escorted to the back of the vehicle, but she was not handcuffed.

Mr. Stephenson then arrived at the scene and officers also requested that he remain clear of the area of the investigation and refrain from interfering with the officers. The record indicates that Mr. Stephenson repeatedly questioned the officers and failed to comply with their instructions not to interfere with the investigation. After several warnings, he was handcuffed and placed in a patrol vehicle.

Officer Duncan eventually transported Karlton to the Houston Police Department Juvenile Division, where he was charged with evading arrest. Mr. and Mrs. Stephenson were both released before Karlton was taken to the station. No charges were filed against them. Karlton was later released to his parents and the charges against him were ultimately dismissed.

Mr. and Mrs. Stephenson filed this suit individually and on behalf of their son under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, alleging that Defendants violated their constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments.[2] They also brought a state law claim for malicious prosecution. Defendants filed motions for summary judgment on all issues. The magistrate judge entered his memorandum and recommendations on one such motion, recommending that the trial court grant summary judgment in favor of the officers and the police department on all claims except for two claims against Officer Duncan: Karlton's § 1983 claim for malicious prosecution in violation of the Fourth Amendment, and Plaintiffs' § 1983 claims for unreasonable seizure in violation of the Fourth Amendment based

---

[2] Plaintiffs do not appear to challenge the district court's dismissal of their 42 U.S.C. §§ 1985, 1986, or 1988 claims, or their claims arising under the Fifth or Eighth Amendments. To the extent that they do attempt to appeal such claims, they have abandoned them, as Plaintiffs have not made any argument regarding these statutory provisions or amendments in their briefs. *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999).

No. 15-20182

on the shooting of their dog. The district court adopted the magistrate judge's recommendations as its order and entered partial summary judgment dismissing with prejudice all claims except for the two against Officer Duncan. Officer Duncan subsequently filed a motion for summary judgment on the remaining two claims against him, and the district court granted a second partial summary judgment on the claim of unreasonable seizure based on the shooting of the Stephensons' dog.

Before trial, the district court concluded that Karlton's malicious prosecution claim was properly addressed as a claim for unreasonable search and seizure under the Fourth Amendment. At trial, the jury found that Officer Duncan did not lack reasonable suspicion to detain Karlton and found that Officer Duncan was entitled to qualified immunity. The district court entered a partial take nothing judgment on Karlton's claim, and on March 6, 2015, the court entered a final judgment on all claims in favor of defendants. Plaintiffs filed this appeal.

## II. Jurisdiction and Standard of Review

The district court had jurisdiction over the Stephensons' claims pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291. We note, however, that, to the extent Mr. and Mrs. Stephenson attempt to appeal claims on behalf of their son, Karlton Stephenson, we do not have jurisdiction to consider any such claims. At the time this case was filed, Karlton was a minor; thus, his parents brought suit both individually and on his behalf. But as of July 19, 2013, before the trial and entry of final judgment in this case, Karlton reached majority. His parents are therefore no longer his legal representatives and do not have standing to bring claims on Karlton's behalf. *See, e.g.*, *Valadez v. United Indep. Sch. Dist.*, No. L-08-22, 2008 WL 4200092, at *1 (S.D. Tex. Sept. 10, 2008) ("[T]he authority of a next friend expires when the minor plaintiff reaches the

age of majority."). Karlton has not timely appealed from the entry of final judgment, and therefore, we lack jurisdiction over any claims belonging to Karlton Stephenson. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314 (1988) (holding that the failure to name a party in a notice of appeal constitutes a failure of that party to appeal); *cf. Colle v. Brazos Cty.*, 981 F.2d 237, 241–42 (5th Cir. 1993) (concluding that the court lacked jurisdiction over undesignated parties, but that the court had jurisdiction to review a minor's appeal where a parent filed a notice of appeal, but merely failed to specify that he appealed both individually and on behalf of his children).

We review de novo a district court's grant of summary judgment, applying the same standards as the district court. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Summary judgment is appropriate if the evidence shows that there is no genuine dispute as to any material fact. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011); FED. R. CIV. P. 56(a). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). "A fact issue is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* (citation omitted). We view all facts and draw all inferences in the light most favorable to the party opposing summary judgment. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

### III. Discussion

#### *A. Qualified Immunity*

A government official performing a discretionary function is entitled to qualified immunity unless his actions violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where, as here, a defendant invokes qualified immunity in a

motion for summary judgment, it is the plaintiff's burden to show that the defendant is not entitled to qualified immunity. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). That is, the plaintiff must present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### B. First Amendment Claims

Plaintiffs challenge the district court's grant of summary judgment on their claims that Officers Duncan and McCray violated their First Amendment rights by detaining[3] them in retaliation for their speech. They allege that the officers detained them for "verbally opposing" the officers' commands that they stay in the house and for challenging the officers' presence at their home, the arrest of their minor son, and the killing of their family dog. The district court determined that Officers Duncan and McCray were entitled to qualified immunity because the record did not support a finding that the officers violated an established constitutional right or acted objectively unreasonably in placing Mr. and Mrs. Stephenson in patrol cars during the investigation. We agree.

"The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," *Enlow v. Tishomingo Cty.*, 962 F.2d 501, 509 (5th Cir. 1992), but if an officer has probable cause to believe that a person is guilty of a crime, "any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail," *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). The district court found here that

---

[3] Plaintiffs characterize their detention as an "arrest," but there is no evidence in the record that either Mr. or Mrs. Stephenson was arrested. In fact, Mrs. Stephenson acknowledged in deposition testimony that she was detained—not arrested.

Mr. and Mrs. Stephenson's detention was based on their refusal to comply with the officers' instructions to move away from the scene of the investigation. Under Texas law, a person commits the offense of "interference with public duties" when "the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty." *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004) (alteration in original).

Mrs. Stephenson testified that Officer Duncan ordered her to go back in her house and to remain clear of the scene of the investigation, but that she refused to do so because she did not consider that an option. Officer McCray confirms Mrs. Stephenson's testimony. He stated that Mrs. Stephenson was very upset and continued to approach the patrol car where her son was located despite the officers' continued warnings. Additional evidence in the record indicates that while officers attempted to mark off the investigation area with police tape, Mrs. Stephenson refused to stay clear of the scene. It was at this point that officers escorted Mrs. Stephenson to a patrol car.

There is similar evidence with respect to Mr. Stephenson. Mrs. Stephenson testified that when her husband arrived, he was distraught and upset and that he was walking around the front yard attending to the dog. She saw him take the dog into the house, and then bring the dog back outside. Officers warned Mr. Stephenson to stay away from the crime scene so they could preserve its integrity, but Mr. Stephenson disobeyed those instructions. After he had been warned numerous times to cease walking through the crime scene, officers handcuffed Mr. Stephenson and placed him in a patrol car.

Based on these undisputed facts, a reasonable officer in either Officer Duncan's or Officer McCray's position could have believed that Mr. and Mrs. Stephenson's actions constituted interference with the officers' duties such that detention was warranted. The record does not support the conclusion that

No. 15-20182

Mr. and Mrs. Stephenson were detained for asking too many questions or verbally opposing the officers. Accordingly, we conclude that Officers Duncan and McCray are entitled to qualified immunity on Plaintiffs' First Amendment claims. *See, e.g.*, *Haggerty*, 391 F.3d at 656–67 (concluding that a reasonable officer could have believed detention was necessary where the plaintiff was loudly arguing with officers and continued to approach officers after being told to step back or get away); *Keith v. Schuh*, 157 F.3d 900, 1998 WL 611207, at *3 (5th Cir. 1998) (unpublished) (undisputed evidence showed that an officer detained a plaintiff because he believed she might pose a security risk if left unsecured).

### C. Fourth Amendment Claims

Plaintiffs also challenge the district court's grant of summary judgment on their claims that Officers Duncan and McCray violated their Fourth Amendment rights by (1) detaining them without probable cause; (2) using excessive force in detaining Mr. Stephenson; and (3) unreasonably seizing their dog. We consider each claim in turn.[4]

1. Seizure of Mr. and Mrs. Stephenson

Plaintiffs contend that Officers Duncan and McCray violated their Fourth Amendment rights by detaining them in their patrol cars without probable cause. Because we have already concluded that Officers Duncan and McCray acted reasonably in detaining Mr. and Mrs. Stephenson, *see supra* Part III.B, we conclude that the officers are entitled to qualified immunity on these Fourth Amendment claims.

---

[4] Plaintiffs appeal the district court's dismissal of their claims that they were deprived of due process of law under the Fourteenth Amendment based on their allegations of unreasonable search and seizure. These claims are properly analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 389 (1989) (claims that law enforcement officials used excessive force in the seizure of a person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard).

No. 15-20182

## 2. Excessive Force Against Mr. Stephenson

Plaintiffs contend that Officer Duncan violated Mr. Stephenson's Fourth Amendment rights by using excessive force in handcuffing Mr. Stephenson. Specifically, Mr. Stephenson complains that the handcuffs Officer Duncan used in detaining him were too tight and caused bruising on and pain in his wrists. Mr. Stephenson testified that he did not need to see a doctor as a result of these injuries. Accepting these facts as true, Mr. Stephenson's excessive force claim fails. An excessive force claim under the Fourth Amendment requires: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). We have previously held that bruising as a result of handcuffing too tightly, without more, does not amount to excessive force. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *see also Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."). Mr. Stephenson's allegations regarding Officer Duncan's application of handcuffs are insufficient to raise a question of fact with respect to the alleged use of excessive force, and therefore Officer Duncan is entitled to qualified immunity on this claim.

## 3. Seizure of the Family Dog

Plaintiffs contend that Officer Duncan violated their Fourth Amendment right to be free from unlawful seizure when he shot and killed their family dog. Officer Duncan contends that he was entitled to qualified immunity from this claim because his actions were objectively reasonable under the circumstances.

This court has held that the killing of a dog can constitute a seizure within the meaning of the Fourth Amendment. *See Grant v. City of Houston*,

No. 14-20653, ___ F. App'x ___, 2015 WL 5255102, at *3 (5th Cir. 2015).  The
Fourth Amendment requires that a seizure be objectively reasonable.  In
making such a determination, we look to the totality of the circumstances,
balancing "the nature and quality of the intrusion on the individual's Fourth
Amendment interests against the countervailing governmental interests at
stake." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).  "We analyze this
question from the perspective 'of a reasonable officer on the scene, rather than
with the 20/20 vision of hindsight[,]'" and "'allo[w] for the fact that police
officers are often forced to make split-second judgments—in circumstances
that are tense, uncertain, and rapidly evolving—about the amount of force that
is necessary in a particular situation.'"  *Plumhoff v. Rickard*, 134 S. Ct. 2012,
2020 (2014) (second alteration in original) (quoting *Graham*, 490 U.S. at 396–
97).

The only witnesses to the shooting of the dog were Officer Duncan and
Karlton.  Officer Duncan testified that as he approached Karlton, the dog
surprised him and growled or barked.  Officer Duncan further stated that the
dog jumped on him and bared its teeth, at which point Officer Duncan
discharged his weapon once, and the dog retreated.  Karlton testified that his
dog was not on a leash at the time that Officer Duncan arrived, but that the
dog was very friendly and was not aggressive.  Karlton testified that his dog
did not jump at Officer Duncan, but looked like it was "smiling."

Viewing the facts in the light most favorable to the nonmovants, we
conclude that Plaintiffs have not produced sufficient evidence to demonstrate
that a constitutional right was clearly established such that a reasonable
officer in Officer Duncan's situation would have understood that his conduct
violated that right.  Officer Duncan did not know there would be a dog present
during his encounter with Karlton and was surprised by its presence.  While
Karlton knew his family pet to be friendly and nonaggressive, Officer Duncan

did not.  Officer Duncan was startled by a large dog that was showing its teeth (whether baring them aggressively or "smiling").  Officer Duncan was forced to make a split-second judgment in a tense situation and he acted to protect himself.  *See Grant*, 2015 WL 5255102, at *1 (granting qualified immunity where an officer shot a dog after being surprised when the dog showed its teeth and charged towards the officer's legs); *cf. Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at *8 (W.D. Tex. Oct. 16, 2009) (fact issues precluded summary judgment where a plaintiff testified that a police officer fired two shots, killing a pit bull who was merely walking toward bushes in the front yard); *Romero v. Bexar Cty.*, 993 F. Supp. 2d 658, 662 (W.D. Tex. 2014) ("It is objectively reasonable for an officer to shoot a dog that he reasonably believes poses a threat." (citing *Altman v. City of High Point*, 330 F.3d 194, 206 (4th Cir. 2003))).  Accordingly, we conclude that Officer Duncan is entitled to qualified immunity on these claims.

*D. Municipal Liability Claims Against Chief McClelland*

Plaintiffs appear to appeal the district court's grant of summary judgment in favor of Chief McClelland on their municipal liability claims.  Plaintiffs allege that Chief McClelland was actually or constructively aware of a custom or policy wherein officers would charge individuals with unwarranted evading arrest or detention charges.  The district court concluded that there was insufficient evidence to support an inference that it was the practice of the Houston Police Department ("HPD") to file unsupported evading arrest charges.

In order to bring a § 1983 claim for municipal liability, a plaintiff must allege a constitutional violation resulting from a municipal custom or policy.  *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 657, 690–94 (1978).  To the extent that Plaintiffs assert this claim on behalf of their son, Karlton Stephenson, the court does not have jurisdiction over this appeal.  *See supra*, Part II.  To the

extent that Plaintiffs assert this claim on their own behalf, they have failed to identify a constitutional violation that they suffered as a result of the alleged municipal policy of unwarranted evading arrest charges: there is no evidence in the record that either Mr. or Mrs. Stephenson was arrested or charged, or even detained for evading arrest.  Accordingly, we affirm the district court's dismissal of Plaintiffs' claims against Chief McClelland in his official capacity.

AFFIRMED.