# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-20290

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2017

Lyle W. Cayce
Clerk

WESLEY JONES; AISLING JONES,

      Plaintiffs - Appellees

v.

OFFICER ADRIAN LOPEZ, Officially & Individually; SAMMY DELACRUZ,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No: 4:14-CV-2728

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

    Two Houston, Texas, police officers appeal a denial of summary judgment on the basis of qualified immunity for their fatal shooting of the plaintiffs' eight-year-old pet dog. We find genuine issues of material fact regarding the events at the plaintiffs' residence, making the applicability of qualified immunity unresolvable at this juncture. We also agree with the district court that the killing of a pet dog is a constitutional seizure.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20290

Our appellate jurisdiction is generally limited to a review of final decisions of the district courts. *See* 28 U.S.C. § 1291. No final decision has been entered here. Even so, jurisdiction could exist in this case because the defendants' motion for summary judgment based on qualified immunity was denied; such a ruling is a collateral order that may be subject to immediate review. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). The denial of qualified immunity, though, may be reviewed on an interlocutory appeal only "to the extent that the district court's order turns on an issue of law." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). That means we have jurisdiction concerning "the materiality of any factual disputes, but not their genuineness." *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (quotation marks omitted).

We also have jurisdiction to consider a legal question on which the denial of qualified immunity turns, specifically whether the claim actually states a constitutional violation. *See Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). We start with that question.

I.   *Killing of a Pet Dog as a Fourth Amendment Seizure*

The defendants assert that the killing of a pet dog by a law-enforcement officer is not a "seizure" within the meaning of the Fourth Amendment. The district court held there was a Fourth Amendment claim for the killing of the pet, which is a legal issue that in turn made a decision on qualified immunity relevant. In two recent decisions we held that an officer's shooting of a pet dog is in some circumstances a seizure under the Fourth Amendment. *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015); *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015).

In *Grant*, law enforcement officers were conducting a search of a suspect's garage pursuant to a warrant when they were confronted by a three-

2

No. 16-20290

legged pit bull that appeared aggressive to the officers. *Grant*, 625 F. App'x at 672. During the search, the dog charged towards one of the officers who was forced to kick the dog to prevent it from biting his legs. *Id.* Witnessing the dog's continued aggressive behavior, the officer shot and killed the dog to prevent it from attacking him. *Id.* On appeal, we addressed the plaintiff's claim that the officers used excessive force to seize the dog in violation of the Fourth Amendment. *Id.* at 675. Relying on a case from the Ninth Circuit, we concluded that "[i]t is beyond dispute that [the officer] 'seized' [the dog] within the meaning of the Fourth Amendment." *Id.* Based on *Grant*, we reached the same conclusion in *Stephenson*. *See* 632 F. App'x at 184. We agree with our prior though non-precedential rulings.

Our conclusion is consistent with that of every other circuit court to have addressed this issue: The killing of a pet dog can be a seizure. *See, e.g.*, *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016) (collecting cases). When presented with the issue as a matter of first impression, the Fourth Circuit undertook an extensive analysis of the relevant legal framework and held "on the strength of the Constitution's text, of history, and of precedent" that "privately owned dogs were 'effects' subject to the protections of the Fourth Amendment." *Altman v. City of High Point,* 330 F.3d 194, 203 (4th Cir. 2003). We see neither a reason to stray from this body of law nor a reason to reiterate the Fourth Circuit's thorough analysis.

## II.    *Materiality of Factual Dispute About the Shooting*

On this issue, we start with a brief look at the evidence. On October 19, 2012, the defendants, Officers Sammy Delacruz and Adrian Lopez of the Houston, Texas, Police Department, responded to a 911 call alleging animal abuse. After speaking to the caller, the officers walked next door to the plaintiffs' home. Officer Delacruz approached the plaintiffs' front door, finding

3

No. 16-20290

it wide open.  According to Delacruz, he twice knocked on the front door and announced, "Houston Police."

Inside the house, the plaintiffs, Wesley and Aisling Jones, were in their kitchen with their eight-year-old pet Boxer named Boss.[1]  At some point, Mr. Jones thought he heard a knock at the door, which was already open, and went to answer it.  Boss, alerted by the noise, ran to the open door.  Mr. Jones lost sight of Boss for approximately one to two seconds when he heard gunshots as he rounded the corner of the kitchen.  At the time the first shot was fired and struck Boss, the dog was still inside the Joneses' home.  Shots were also fired at the dog once it was outside.

The Joneses contend that, as Mr. Jones stood in the doorway, he witnessed Officer Delacruz fire several more shots at Boss as the dog was running away to the corner of the house.  Upon hearing the first shot, Mrs. Jones made her way to the front of the house.  She could see Boss running towards the side of the house through the front windows of the living room.  Boss was struck by a second bullet, fired this time by Officer Lopez, near the corner of the house.  The dog never approached within ten to fifteen feet of the officers and did not turn back in the direction of the officers once he retreated to the side of the home.

The defendants paint a decidedly different picture.  Officer Delacruz states that, after the second time he knocked, he began to walk away from the Joneses' front door.  He claims when he was about three feet from the door, he noticed a large dog — appearing to him as a pit bull terrier mix — charging at him.  Officer Delacruz states he made it a few more feet from the door when his path of travel was impeded by a large flower pot.  He claims the dog was

---

[1] Boss, a fifty-five pound brindle Boxer, had no history of aggressive behavior and was recovering from a recent surgery.

barking and growling loudly and attempting to bite his left leg. Fearing for his safety, Officer Delacruz fired two shots at Boss. Both officers testify that the dog briefly retreated, but then turned again to approach Officer Delacruz.

Officer Lopez claims that he knew the dog was going to continue attacking Officer Delacruz. With no owner in sight to exert control over Boss, Officer Lopez discharged his service weapon once, striking the dog while he was near the corner of the house. Boss ultimately died from internal bleeding as a result of the gunshot wounds.

The district judge orally explained his denial of summary judgment as to qualified immunity at the hearing on the motion:

> THE COURT: No. I think I understand the facts. There were three shots fired. The plaintiffs didn't see the first one but saw the next two. The dog was wounded after the first shot and was killed by subsequent shots. I think I understand the facts generally.
>
> It just seems to me we have a fact issue as to what danger the dog posed to the police officers.

There are obviously factual disputes here. The plaintiffs state they were near the dog, only two seconds behind in the house. They never saw him threaten to attack the officers, heard him growl, or otherwise pose the threat identified by the officers. Whether the disputes are material is the limit of our review. *See Zoss*, 837 F.3d at 517. The defendants argue that this alleged factual dispute falls into the category of a false dispute, when the plaintiffs' version is "blatantly contradicted" and "utterly discredited." *See Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, though, the Supreme Court was discussing a contemporaneous video that discredited opposing testimony. *Id.* at 378–81. There is no video here. Instead, we have a conflict of self-serving statements from each side.

"[T]he district court's ruling cannot be appealed to the extent that the

official seeks to challenge the district court's determinations regarding the sufficiency of the summary-judgment record." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (emphasis omitted). We are to consider whether the factual dispute is material. It is, as resolving it will resolve whether there was any basis for the officers' seizing the dog by shooting him.

Here, the district court correctly construed all facts in the light most favorable to the Joneses as the non-moving party and found a genuine dispute of material fact suggesting the officers' conduct violated their constitutional rights and that the officers' actions were objectively unreasonable in light of clearly established law. A district court's determination, in the face of conflicting evidence, "that there was a genuine issue of material fact concerning the lawfulness of the force employed by [the officers]" is the sort of factual determination we lack jurisdiction to review on interlocutory appeal. *See Baulch v. Johns*, 70 F.3d 813, 815 (5th Cir. 1995).

Without a question of law to resolve, we lack jurisdiction over the denial of qualified immunity. *See id.* We do have jurisdiction to consider the purely legal issue of whether the Joneses have raised a Fourth Amendment claim. *Palmer*, 193 F.3d at 351. They have.

\* \* \*

We agree with the legal ruling that the killing of the plaintiffs' pet dog raises a Fourth Amendment claim. We DISMISS the appeal of the denial of qualified immunity and REMAND for further proceedings consistent with this opinion.