# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 96-30225
_____


CARNELL KENT BALDWIN,

Plaintiff-Appellant/Cross-Appellee,

versus

RICHARD L. STALDER; ET AL.,

Defendants,

RICHARD L. STALDER; JAMES W. HERRON,

Defendants-Appellees/Cross-Appellants.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

March 17, 1998

Before POLITZ, Chief Judge, GARWOOD, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

Primarily at issue is whether the district court erred in finding that, through excessive force, prison official James W. Herron violated the Eighth Amendment rights of inmate Carnell Kent Baldwin. We **REVERSE** that portion of the judgment and **RENDER**.

I.

Late in 1993, Baldwin, an inmate at Washington Correctional Institute (WCI), filed a 42 U.S.C. § 1983 action, claiming that, as a result of two incidents on two successive days, numerous prison officials, *inter alia*, through use of excessive force violated his Eighth Amendment rights. Two of the named defendants were Richard

L. Stalder, Secretary of the Louisiana Department of Public Safety and Corrections, and WCI prison official Lieutenant Colonel Herron.

Baldwin's action began with an incident at WCI on 3 August 1993, in which he and approximately 100 other inmates witnessed a confrontation between a guard and an inmate (prison-yard incident). After order was restored, Baldwin continued to protest verbally. While being removed from the area by a guard, Baldwin began to struggle, at which point other guards were called to subdue him. (Baldwin testified that he struggled due to a sore shoulder, not out of resistance; and that, as a result, he suffered serious injuries.)

The next day, 4 August, due to their participation in the prison-yard incident on 3 August and a resulting work stoppage on 4 August, Baldwin and 18 other inmates were transferred by prison bus to a more restrictive facility. All of the inmates were in four point restraints, consisting of shackles around the legs and waist with handcuffs. After the inmates were loaded onto the bus, and while it was parked in an unfenced area of the prison next to the armory, some of the inmates (the number was in dispute at trial) began jumping on the seats, spitting at the officers outside the bus, rocking the bus, and otherwise causing a disturbance.

After those inmates ignored three orders to stop, Colonel Herron, the senior ranking official then on duty, in an effort to restore order, fired a two second burst of pepper mace down the middle of the bus. The inmates were not allowed to wash the mace

off and were kept on the bus until they reached their destination approximately three hours later.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). Two days after a less than one and one-half day bench trial in early 1996, the magistrate judge made oral findings of fact and conclusions of law upon hearing very brief closing arguments.

The magistrate judge held against Baldwin on his prison-yard incident claim; the vast portion of the trial had pertained to that claim. But, as for the bus incident, the magistrate judge held that Herron had used excessive force. The trial court also held against Baldwin on his other claims. The other defendants, including Secretary Stalder, were dismissed either voluntarily or by the court.

Finding that Baldwin's injury, if any, from being maced was "minor" and his resulting damages *de minimis*, the magistrate judge did not award monetary damages. Instead, Herron was ordered to attend excessive force training; and Secretary Stalder, who, as noted, had been dismissed from the action, was ordered to place a letter of reprimand in Herron's personnel file and to ensure Herron received the training.

Herron and Stalder moved for a new trial, contending that placing a reprimand letter in Herron's personnel file would violate state law. The magistrate judge amended the judgment, ordering Stalder instead to so place a copy of the amended judgment.

For starters, it is well to remember that the pertinent Eight Amendment proscription is only against "punishments" that are "cruel and unusual". Accordingly, "[w]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the *core judicial inquiry* is ... whether force was applied in a *good-faith effort to maintain or restore discipline*, *or maliciously and sadistically to cause harm*." **Hudson v. McMillian**, 503 U.S. 1, 7 (1992) (emphasis added). On remand to our court in **Hudson**, we repeated the type considerations listed by the Supreme Court in **Hudson**, 503 U.S. at 7, that come into play for this "core judicial inquiry":

> Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include:
>
> 1. the extent of the injury suffered;
>
> 2. the need for the application of force;
>
> 3. the relationship between the need and the amount of force used;
>
> 4. the threat reasonably perceived by the responsible officials; and
>
> 5. any efforts made to temper the severity of a forceful response.

**Hudson v. McMillian**, 962 F.2d 522, 523 (5th Cir. 1992); *see also,* **Rankin v. Klevenhagen**, 5 F.3d 103, 107 (5th Cir. 1993); **Valencia v. Wiggins,** 981 F.2d 1440, 1446-47 (5th Cir.), *cert. denied,* 509 U.S. 905 (1993). Of course, these identified factors are not exclusive;

- 4 -

each case must be judged on its own facts. *Rankin*, 5 F.3d at 107 n.6.

As noted, the magistrate judge found that "[a]ny injury that was suffered ... was minor." Obviously, the absence of serious injury is quite relevant to an excessive force inquiry, but does not alone preclude relief. *Hudson*, 503 U.S. at 7. On the other hand, "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (quoting *Hudson*, 503 U.S. at 7). In this regard, the Court reminded in *Hudson* that an Eighth Amendment violation does not occur with "every malevolent touch by a prison guard". *Hudson*, 503 U.S. at 9.

In maintaining that the magistrate judge erred in finding that Herron violated Baldwin's Eighth Amendment rights, Herron and Stalder point to several of the *Hudson* factors concerning whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. They assert that the trial court failed to find that Herron acted with the requisite culpable state of mind (restated, failed to find that he acted maliciously or sadistically for the very purpose of causing harm); that, because the trial court found any injury was minor, and damages *de minimis*, it should have found that only *de minimis force* was used and, therefore, no Eighth Amendment violation could occur; and that it failed to defer to Herron's

judgment as to the appropriate use of force.  (They also contend that the magistrate judge exceeded her authority by ordering Stalder, although dismissed from the action, to implement Herron's excessive force training.  And, although Baldwin does not challenge the no-liability holdings for the prison-yard and other non-bus incident claims, he does challenge the denial of monetary damages for the bus incident. Because we reverse and render on the excessive force ruling, we do not reach these issues.)

Of course, we review bench trial findings of fact for clear error; conclusions of law, *de novo*. *E.g., Seal v. Knorpp*, 957 F.2d 1230, 1234 (5th Cir. 1992).  In this regard, we review for clear error a trial court's ruling on excessive use of force.  *See Valencia*, 981 F.2d at 1447 ("district court was not clearly erroneous in finding [] use of force grossly disproportionate to the need for action"); *Robinson v. Stovall,* 646 F.2d 1087, 1090 (5th Cir. Unit A June 1981) (determination by trial judge of no excessive use of force was not clearly erroneous); *accord Quezada v. County of Bernalillo*, 944 F.2d 710, 715 (10th Cir. 1991) ("whether the police used excessive force in a § 1983 case has always been seen as a factual inquiry best answered by the fact finder").  In this regard, as is quite well-known, for a finding to be clearly erroneous, we must have a firm conviction, based on a review of the entire record, that a mistake has been made. *See, e.g., Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996).

Immediately after closing arguments, made two days after the close of evidence for the very brief trial to the court, the magistrate judge ruled from the bench as to Herron:

> The Court has considered the *motivation* of Lieutenant Colonel Herron in taking the action which he took. He was temporarily in command that day, the warden and other ranking individuals being away on business. He had an *unusual occurrence to handle*, but he should have been trained in the handling of that situation. The *bus was a new piece of state property*. The Court can understand that he felt aggravated and apprehensive that he was being called upon to deal with the situation, so he took the path of least resistance rather than the one of least force in dealing with the problem.

(Emphasis added.) Based on the foregoing, it is quite arguable, as urged by Stalder and Herron, that the magistrate judge failed to find that Herron acted with the requisite culpable state of mind.

On the other hand, the trial court next applied the five above-quoted factors identified both in **Hudson** and in our court's **Hudson**-remand opinion, and found that, as noted, "any injury ... suffered ... was minor"; that there was a need to apply force as to *only one or two* of the prisoners on the bus; that the amount of force used was excessive in the light of the situation; that a reasonable person could not have believed that the prisoners "were going to cause *massive* damage" or overturn the bus; and that "[t]here were no efforts made to temper this continuing response". (Emphasis added.)

Next, the magistrate judge stated that "[t]he Court cannot condone the fact that mace was used under this set of circumstances and then people were not allowed, according to the [Department of

- 7 -

Corrections] policy, to either wash off [or otherwise] mitigate the effects of this mace." Consequently, the magistrate judge found a constitutional violation from Herron's actions.

Based upon our review of the record, and as shown by these findings, it is, again, quite arguable that the magistrate judge failed to find that Herron's actions were not a *good faith effort to maintain or restore discipline*, and instead were *intended to maliciously and sadistically cause harm*. But, even assuming that the trial court so found by implication, that finding is clearly erroneous for the following reasons. (As noted, Herron and Stalder urge that the *de minimis* damages finding compels a *de minimis* injury finding, that compels a *de minimis* force finding, that compels a no excessive force finding. But, for starters, the magistrate judge found that "*any*" injury was "*minor*", not *de minimis*. In any event, because the excessive force finding was otherwise clearly erroneous, we need not reach this subissue.)

Needless to say, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." ***Ikerd v. Blair***, 101 F.3d 430, 434 (5th Cir. 1996). To this end, when evaluating ***Hudson*** factors, the finder of fact must keep in mind that prison officials "may have had to act quickly and decisively." ***Valencia***, 981 F.2d at 1446. Accordingly, they are entitled to wide-ranging deference. (This is so well known that no authority need be cited.) Pursuant to our review of the record, it was clearly erroneous to find that Herron's actions were not a *good faith effort to maintain or*

- 8 -

*restore discipline* in what he perceived to be a highly volatile and potentially dangerous situation.

As did other prison officials, Herron testified about the prison-yard incident which had occurred the day before and the resulting tension among the inmates. (No doubt, the tension was in part due to a warning shot being required during the prison-yard incident.) The prisoners on the bus had been involved in that incident and the ensuing work stoppage, and were being transferred to a more secure facility due to their involvement. Moreover, and perhaps most significant, Herron testified that, at the time of the disturbance on the bus, it was parked in an unfenced area near the armory and he was concerned about possible escape attempts. Along this line, the bus driver testified that, during the disturbance, he was concerned that the inmates could break through the gate that separated him from them.

It appears that the linchpin to the excessive force finding is the finding that only "one or two inmates -- not 19 ... were acting up" on the bus. (This finding was in line with a similar statement made by Baldwin's attorney during the just completed closing argument; defendants' counsel did not respond to it.) In this regard, one prisoner testified that no one was "misbehaving or jumping up and down" on the bus; Baldwin, as well as one other prisoner, testified that only one or two were.

Of course, this was totally at odds with the testimony of the bus driver, Herron, and another prison official on the scene. But, Herron and Stalder do not challenge this only-one-or-two-inmates

finding.  Although we, of course, defer to credibility rulings, *e.g.*, **United States v. Bass**, 10 F.3d 256, 258 (5th Cir. 1993), this finding appears to be clearly erroneous.  We need not so decide, however, because, in any event, even with this low number, in conjunction with the surrounding circumstances, the excessive force finding was clearly erroneous.

Moreover, the reasons given by Herron for not allowing the inmates to leave the bus to wash off the mace were more than reasonable.  He was concerned that this procedure would simply result in further disruptions and continuation of the disturbance, and he testified that no one requested medical assistance in response to his post-macing inquiry.  (Of course, the testifying prisoners denied the inquiry was made.)  Moreover, air movement is one approved method to ameliorate the effect of mace; the bus windows were open; and it was soon moving, increasing air flow in the bus.  Finally, and perhaps most importantly, the finding that Baldwin had only *minor* injury, if any, with resulting *de minimis* damages, confirms the reasonableness of Herron's decision to not allow washing off the mace.

In the light of the situation Herron encountered, and based on our review of the record, the trial court clearly erred in finding that a two second use of mace, including not allowing immediate washing, was not a *good faith effort* to maintain or restore discipline.  *See* **Hudson**, 503 U.S. at 9 ("not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights") (quoting

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973)).  In this regard, we find absolutely *no* evidence to support finding that Herron acted with a malicious and sadistic intent to cause harm.

III.

In sum, the magistrate judge clearly erred in finding that Herron violated Baldwin's Eighth Amendment rights.  Therefore, the related portions of the judgment are **REVERSED** and judgment is **RENDERED** for Richard L. Stalder and James W. Herron.

*REVERSED in PART and RENDERED*