# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fif h Circuit

**FILED**

March 14, 2017

Lyle W. Cayce
Clerk

————

No. 16-40486

————

LINDA SURRATT, Individually and as heir and legal representative of the
Estate of Lesa Ann Surratt, deceased,

    Plaintiff - Appellant

v.

BRIAN MCCLARIN; CITY OF SHERMAN; TOM CAVER; TREVOR
STEVENS,

    Defendants - Appellees

————————————

Appeal from the United States District Court
for the Eastern District of Texas

————————————

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this qualified immunity case, the question on appeal is whether—in light of clearly established law at the time of the incident—officers acted objectively unreasonably when they applied force to the jaw and throat of a suspect who was believed to be hiding evidence in her mouth. Because we conclude that they did not, we AFFIRM.

**I.**

On August 20, 2013, police officer Tom Caver of the Sherman Police Department effected a traffic stop, pulling over Lesa Ann Surratt ("Surratt") for signaling one direction but then turning the other. The stop was pretextual.

No. 16-40486

Earlier that day, Caver had been informed that Surratt was in possession of narcotics.

Once officer Trevor Stevens arrived as backup, the officers arrested Surratt for the traffic violation. They also arrested Surratt's only passenger, Monica Garza, on some outstanding traffic warrants. The officers handcuffed both women and placed them in the backseat of Caver's patrol car, securing them with seatbelts. The patrol car was equipped with an in-car video surveillance system which recorded most of the remaining events at issue.

The officers returned to Surratt's vehicle to retrieve the women's personal effects, briefly leaving the women alone and unsupervised in the backseat of the patrol car. During this time, Surratt managed to free her right hand from her handcuffs, pull a small baggy of narcotics from underneath her skirt, and place it in her mouth. When Stevens returned to the patrol car a few moments later, he opened the back door nearest to Surratt and heard what sounded like an object hitting the floor. He asked, "What did you do? What did you drop?" When the women stated that they had not dropped anything, Stevens ordered Caver—who had just returned to the vehicle himself and opened Garza's side door—to "[g]et 'em out, one by one. They were trying to hide something."

Stevens then noticed Surratt's skirt and observed, "She's got her britches pulled up, it's in her, it's in her pants." Caver reached across Garza and grabbed Surratt's right arm which was behind her back. He then shined his flashlight in Surratt's face and ordered her to "open [her] mouth up." Less than four seconds later, Stevens pressed his forearm against Surratt's left jawline and neck while Caver pressed his thumb into the back of her right jawline to try and force her to open her mouth.

Surratt fought back, grabbing at Caver's arms as he continued to apply what the police department called "soft hands techniques." She also kept

2

ignoring the officers' instructions to open her mouth. After several seconds of struggle, Caver grabbed Surratt's right hand and attempted to pull her over Garza and out the door. Because Surratt's seatbelt was still buckled, this took nearly a minute. By the time she was completely out of the patrol car, Surratt was unresponsive and having a seizure.

The officers noted that Surratt was not breathing and radioed for an ambulance. By this time, several other officers had arrived on the scene as backup. The officers assumed that Surratt was choking. Detective Brian McClaran[1] administered the Heimlich Maneuver in an effort to dislodge the obstruction in her throat, but was unsuccessful. Eventually, the fire department arrived and used forceps to remove the plastic baggie from Surratt's throat. She was transported to the hospital and placed on life support but died thirteen days later as a "result of complications of asphyxia due to airway obstruction by plastic bag."

Surratt's sister, Linda Surratt ("Linda"), then filed the instant lawsuit. She asserted claims against Caver, Stevens, McClaran, and the City of Sherman for excessive force, unreasonable search and seizure, violation of due process, and conspiracy, as well as Texas state-law claims for wrongful death, assault and battery, and breach of fiduciary duty. The defendants filed a motion for summary judgment. The district court granted the motion, partly because it concluded that the officers were entitled to qualified immunity. While the district court concluded that the officers *had* violated Surratt's Fourth Amendment right to be free from excessive force, it held that the officers' actions were not objectively unreasonable in light of clearly established law at the time of the incident. Linda timely appealed.[2]

---

[1] Officer McClaran's name is misspelled "McClarin" in the case style.

[2] While Linda originally indicated that she intended to appeal all of the district court's rulings, her brief focuses exclusively on the district court's qualified immunity determination

No. 16-40486

## II.

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Section 1983 enables persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations. 42 U.S.C. § 1983. But qualified immunity insulates those government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts use a two-prong analysis to determine whether a defendant is entitled to qualified immunity in a given case. The court must decide both whether the plaintiff has alleged a violation of a constitutional right and whether the government official acted objectively unreasonably in light of "clearly established" law at the time of the incident. *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). In *Pearson v. Callahan*, the Supreme Court determined that courts may tackle these questions in any order. 555 U.S. 223, 227 (2009).

---

with respect to her excessive force claims. As such, we consider all other arguments waived. *Health Care Serv. Corp. v. Methodist Hosp. of Dall.,* 814 F.3d 242, 252 n.38 (5th Cir. 2016) ("[I]t is clear that a party who fails to raise an issue in its initial brief waives the right to review of that issue . . . .").

No. 16-40486

Assuming without deciding that the officers' conduct violated Surratt's constitutional rights, Linda has failed to demonstrate that the officers acted objectively unreasonably in light of clearly established law at the time of the incident. "[F]or a [law] to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). This is done only when we can "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* at 552.

Linda has failed to meet this burden. At oral argument, her counsel admitted that she could not point to any binding precedent where a similarly situated officer was found to have violated the Fourth Amendment. The Supreme Court and Fifth Circuit precedent she does cite "lay out excessive-force principles at only a general level," which the Supreme Court has held to be insufficient outside "an obvious case." *Id.*

Furthermore, Fifth Circuit precedent actually supports the conclusion that the officers' conduct was *not* objectively unreasonable in light of clearly established law. In *Espinoza v. United States*, a suspect—when confronted by police officers—attempted "to swallow and destroy what to the officers appeared to be . . . a quantity of narcotics." 278 F.2d 802, 804 (5th Cir. 1960). The officers responded by "choking [the suspect] and attempting to pry open his mouth by placing pressure against his jaw and nose." *Id.* at 803. The panel concluded that "no more force was used than was necessary under the circumstances." *Id.* at 804. [3]

---

[3] Surratt asserts that *Espinoza* has no value after the Supreme Court decision in *Schmerber v. California*, 384 U.S. 757 (1996). But *Schmerber* concerned whether police could draw a suspect's blood without his permission to show he was driving under the influence of alcohol. *Id* at 759. *Schmerber* did not address police use of force to prevent a suspect from swallowing evidence. Surratt cites no case holding that *Schmerber* overrules or otherwise

No. 16-40486

As the district court noted, "previous law has provided no guidance regarding what is precisely reasonable and what is unreasonable regarding the use of force to an individual's throat where the individual appears to be concealing something in their mouth." Accordingly, we cannot say that the officers acted objectively unreasonably in light of clearly established law.

## IV.

In conclusion, we AFFIRM the district court's grant of summary judgment.

---

changes the analysis in *Espinoza*, nor does she cite any case from this circuit holding that the bodily intrusion in *Schmerber* is analogous to the use of force in *Espinoza*. In addition to all that, *Schmerber* found no constitutional violation.