# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2026

Lyle W. Cayce
Clerk

No. 25-50596

Branden Sanchez,

*Plaintiff—Appellee*,

*versus*

Jonathan Bates Nunemaker,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:25-CV-109

Before Clement, Southwick, and Engelhardt, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

The plaintiff is a motorist who was detained by the defendant deputy sheriff. The claim under 42 U.S.C. § 1983 is that the officer used excessive force during the plaintiff's detention in the officer's vehicle. The officer, asserting qualified immunity, filed a motion to dismiss. The district court denied the motion, and we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, Jonathan Bates Nunemaker, a Medina County deputy sheriff, was on routine patrol in Castroville, Texas. He saw an automobile

with its emergency lights flashing, ran the license plates, and learned there was a report that the vehicle had been stolen and used during an aggravated robbery. Nunemaker initiated a stop, handcuffed the driver — the plaintiff Branden Sanchez — and placed him in the back of Nunemaker's cruiser.

Over approximately the next 50 minutes, Nunemaker searched the vehicle and found drugs, a rifle-style pellet gun, and other items. Eventually, four other law enforcement officers arrived on scene to assist. During this time, Sanchez repeatedly yelled and kicked the inside of the cruiser's doors, demanding to be taken to jail. In response, Nunemaker and another officer warned Sanchez several times that he would be pepper-sprayed or otherwise subdued if he continued his behavior.

After being detained for about 45 minutes, Sanchez began sitting on his knees and moving around in the back of the cruiser. Nunemaker told Sanchez to sit with his back against the seat. Sanchez initially complied but then resumed moving around. Nunemaker again ordered Sanchez to sit, but Sanchez protested that his handcuffs were too tight. Nunemaker reiterated his order that Sanchez sit and stated that if he did not do so, Nunemaker would make him. Nunemaker grabbed Sanchez's arm and sharply twisted him, forcing him into the seat and causing his head to hit the cruiser's hard cage partition.

Once the door was closed, Sanchez began kicking it again, yelling, and refusing to stay seated. Nunemaker walked to the other side of the cruiser and opened the door, causing Sanchez to turn towards him. Nunemaker then aimed a pepper-spray device called a Centurion Law Enforcement Deployment System ("CLE") at Sanchez's face. He fired the device from approximately 3.6 feet away from Sanchez, about half the seven-foot distance the manufacturer's instructions state to be safe. The CLE discharged a high-

velocity jet of pepper spray into Sanchez's left eye, permanently blinding that eye.

Sanchez brought suit under 42 U.S.C. § 1983, alleging that Nunemaker violated Sanchez's Fourth Amendment rights by using excessive force. Nunemaker filed a motion to dismiss or, in the alternative, for judgment on the pleadings, in which he asserted that qualified immunity barred Sanchez's Section 1983 claim. The district court denied Nunemaker's motion, concluding that Sanchez had sufficiently pled that Nunemaker used excessive force in violation of clearly established law. Nunemaker appealed.

## DISCUSSION

We review *de novo* the district court's denial of Nunemaker's motion. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Dismissal of a complaint is proper if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint is insufficient if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). We view all well-pled facts and video recordings incorporated into the pleadings in the light most favorable to the plaintiff. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1162–63 (5th Cir. 2021). Video recordings, though, "should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations" so that no reasonable jury could believe those allegations. *Id.* at 1163 (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

When a "motion to dismiss raises the defense of qualified immunity, the plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (alteration in original) (quotation

omitted). To do so, the plaintiff must "have alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Harmon*, 16 F.4th at 1163.

## I.    *Constitutional Violation*

"Section 1983 enables persons who have been 'depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws' of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations." *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017) (alteration in original) (quoting 42 U.S.C. § 1983). The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. An officer's use of excessive force constitutes an unreasonable seizure. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). To establish "a Fourth Amendment excessive-force claim, a plaintiff must show two things: (1) a seizure occurred; and (2) the force used was unreasonable." *Estate of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 238 (5th Cir. 2025).

It is undisputed that Nunemaker's use of pepper spray was a seizure that injured Sanchez. Thus, the "question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quotation omitted). This analysis requires examining the totality of the circumstances, with "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight."[1] *Id.* at 396.

It is true that here the crimes at issue were quite severe, given that Sanchez was suspected of armed robbery and was found driving a reportedly stolen car with weapons inside. Nevertheless, at the time of the seizure, Sanchez did not pose a threat to the safety of the officers or others. The physically slight seventeen-year-old was handcuffed, seat-belted in the cruiser, and surrounded by five officers. Of course, Sanchez was disruptive and resisted Nunemaker's commands to sit properly and face forward in the seat. Earlier, Sanchez had complied with Nunemaker's orders to exit the BMW, lie on the ground, place his hands behind his back to be cuffed, and enter the cruiser. Sanchez was making no attempt to flee and instead was repeatedly demanding to be taken to jail rather than be required to wait while Nunemaker searched the vehicle.

Viewing the complaint and the video recordings it incorporates in the light most favorable to Sanchez, we conclude that Sanchez stated a plausible claim that Nunemaker's discharging high-velocity pepper spray directly into Sanchez's eye from half the manufacturer-provided minimum safe distance constituted excessive force.

---

[1] The use of deadly force, when present in the facts, constrains our inquiry to focus on whether "the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Here, Sanchez asserts that the pepper spray was deadly force because discharging it at a person's face from less than the minimum safe distance of seven feet may result in death or other serious injury. Nonetheless, we need not decide whether Sanchez has sufficiently pled this fact because Nunemaker's qualified immunity defense fails even if the use of pepper spray here did not constitute deadly force.

II.     *Clearly Established Law*

We next address whether the constitutional right in question was clearly established at the time of the violation. *See Harmon*, 16 F.4th at 1163. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Lowndes County*, 678 F.3d 344, 351 (5th Cir. 2012) (quotation omitted). A plaintiff may demonstrate a violation of clearly established law by identifying a case that would have put a reasonable officer on notice that his specific conduct was unlawful. *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022).

Sanchez's complaint cites *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013). There, after the suspect Ramirez resisted arrest by pulling his arm away, the defendant officer Martinez tased Ramirez in the chest. *Id.* at 372. Several officers then forced Ramirez to the ground and handcuffed him. *Id.* at 373. Martinez next used a taser on the restrained Ramirez a second time. *Id.* Holding that a constitutional violation occurred, this court stated that Ramirez's "[p]ulling his arm out of Martinez's grasp, without more, [wa]s insufficient to find an immediate threat to the safety of the officers." *Id.* at 378.

Martinez's conduct was unconstitutional because, after Ramirez resisted arrest by pulling his arm away, Martinez twice tased Ramirez — including once when he was handcuffed, on the ground, and surrounded by several officers. *See id.* at 378–79. Here, after Sanchez resisted commands by kicking the cruiser's doors and refusing to sit properly, Nunemaker pepper-sprayed Sanchez in the face when he was handcuffed, seat-belted, and surrounded by several officers. Given the factual similarities, *Ramirez* would have put a reasonable officer in Nunemaker's position on notice that it is unlawful to discharge pepper spray directly into the eye of a handcuffed,

restrained, outnumbered suspect not posing an immediate threat or attempting to flee.

Nunemaker, in contending that his conduct did not violate clearly established law, analogizes to *Brothers v. Zoss*, 837 F.3d 513 (5th Cir. 2016). There, police attempted to stop a heavily intoxicated man from driving his truck. *Id.* at 516. The suspect repeatedly refused to comply with officers' instructions to exit the truck. *Id.* Officers opened the driver's-side door, grabbed both of his arms, and pulled him out of the elevated truck. *Id.* The suspect slammed hard into the ground, which broke his vertebrae and rendered him quadriplegic. *Id.* at 515–16. This court held that the officers' use of force was not excessive, reasoning "that the force they employed was moderate" and that they "slowly escalated the amount of force until it was enough to extract" the suspect. *Id.* at 519.

The distinctions from *Brothers* are obvious. There, officers were attempting to remove the suspect from his truck and detain him. The force used was reasonable given that the suspect "might have had access to a weapon or could have tried to drive his huge, elevated truck into the police car" blocking his truck. *Id.* at 520. Here, Nunemaker had already removed Sanchez from the BMW, handcuffed him, and placed him in the cruiser. The threat of harm posed by Sanchez, who was restrained and known to be unarmed, was at most to the officer's cruiser, not to any person. It was thus a significantly less serious threat than in *Brothers*.

Nunemaker also cites *Baldwin v. Stalder*, 137 F.3d 836 (5th Cir. 1998). In that case, officers were transporting 19 inmates to a more restrictive facility. *Id.* at 838. "After the inmates were loaded onto the bus, and while it was parked in an unfenced area of the prison next to the armory, some of the inmates . . . began jumping on the seats, spitting at the officers outside the bus, rocking the bus, and otherwise causing a disturbance." *Id.* After the

inmates ignored three orders to stop, an officer discharged pepper spray down the middle of the bus. *Id.* This court held that the officer's use of force was constitutionally permissible because it was "a good faith effort to maintain or restore discipline in what he perceived to be a highly volatile and potentially dangerous situation." *Id.* at 840 (emphasis omitted).

A situation where 19 inmates pose a threat of escaping and obtaining firearms is much more dangerous than one where five officers surround one suspect who does not pose any significant threat of fleeing or acquiring a weapon. The level of force used in *Baldwin* was also lower; although the officer there faced a volatile situation, he fired the spray down the middle of the bus — not into the inmates' faces at close range. The facts of *Baldwin* are therefore distinguishable from this case.

In sum, Nunemaker could be found to have violated clearly established law by discharging high-velocity pepper spray from half the manufacturer-provided minimum safe distance into the face of a suspect. That suspect was handcuffed and restrained by his seat belt in a law enforcement officer's vehicle, not attempting to flee, and not posing an immediate threat. Sanchez has sufficiently pled facts to support an excessive-force claim, and those facts overcome Nunemaker's qualified immunity defense at the stage of a motion to dismiss for failure to state a claim.

AFFIRMED.